no importance, since defendant took his title under the foreclosure
judgment, and not otherwise.

Our conclusion is that the plaintiff's title was subject to the
Tichenor mortgage, and that this mortgage was valid; and defend-
ant, holding title under the judgment foreclosing it, has, upon the
record before us, the better title to the 50 acres. As Swartwout
was not a party to the foreclosure of the Tichenor mortgage, we
do not intend by this decision to prejudice any facts which may be
adduced hereafter, either to subject it to his judgment or other-
wise to impeach it.

Judgment reversed; new trial granted; costs to abide the event.
All concur.

(17 App. Div. 177.)
                KILBRIDE v. NEW YORK CENT. & H. R. R. CO.

        (Supreme Court, Appellate Division, Third Department.    May 5, 1897.)

RAILROAD COMPANIES—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.
    Deceased was guilty of contributory negligence where he walked in day-
    light along the side of a high wagon which obstructed his view of defend-
    ant's railroad tracks, and stepped from behind the wagon on the track im-
    mediately in front of the engine which struck him.

Appeal from trial term, Rensselaer county.

Action by Bernard Kilbride, as administrator of Owen Kilbride,
deceased, against the New York Central & Hudson River Railroad
Company, to recover damages for the death of the plaintiff's intestate
alleged to have been caused by defendant's negligence. From a judg-
ment entered on a verdict in favor of plaintiff for $4,477.72 damages,
besides costs, and from an order denying motion for a new trial, de-
fendant appeals. Reversed.

The action is one based upon the alleged negligence of the defendant, which
resulted in the death of the plaintiff's intestate. The accident occurred be-
tween 3 and 4 o'clock in the afternoon of October 22, 1892, at a point where
the tracks of the defendant are intersected and crossed by Madison street, in
the city of Troy. At that point the tracks of the defendant run north and
south, and occupy the whole space of what would be River street, were it
extended north to this point. Madison street, which here intersects it, is a
street running east and west. The northwest corner of Madison street, and
what, for the sake of brevity, we will call River street, is occupied by the
Rensselaer Iron Works. Their premises are surrounded by a board picket
fence, some 12 feet in height, extending westwardly on Madison street, and
northerly on River street. Next east of this fence there are two narrow-gauge
tracks, running north for a short distance, and then entering the premises of
the Rensselaer Iron Company. Next east of the narrow-gauge tracks is the
westerly track of the defendant. At the time of the happening of the acci-
dent, there was a wagon loaded with fire brick on the north side of Madison
street, the heads of the horses attached to such wagon looking west, the rear
end of the wagon being within three feet of the westerly rail of the defend-
ant's west track. One or two small cars (called in the case "dump cars,"
were upon these narrow-gauge tracks directly against the wagon box, and the
driver of the wagon was engaged in unloading the fire brick from the wagon
into these small cars. From the ground to the top of the wagon box was a
distance of about six feet. The plaintiff's intestate was about five feet two
inches in height. Shortly before the happening of the accident, an engine of
the defendant was backing down from the north, coming in the direction of
Madison street. It stopped a short distance away, to admit of the readjust-

ment of some switches for the passage of an engine and some freight cars, and then started up, and proceeded upon its way south; and it was the tender of this engine which struck the plaintiff's intestate, and caused his death. Further facts will appear in the opinion.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

R. A. Parmenter, for appellant.
John T. Norton, for respondent.

HERRICK, J.    There is some conflict in the testimony as to just where the plaintiff's intestate was at the time he was struck by the tender of the defendant's engine; some of the witnesses placing him on the south side of Madison street, and some of them placing him just south of the wagon box, or on a line from the wagon box, which was standing on the north side of the street.    For the purpose of this case, that state of facts which is most favorable to the plaintiff, and which there is any evidence to sustain, will be assumed.    I therefore adopt the statement of the respondent's counsel contained in his brief as to the happening of this accident:

"Plaintiff's intestate came south through the yard of the Rensselaer Iron Works, and into Madison street, through the door or gate in the fence which ran along the north line of Madison stret, inclosing the yard of the Rensselaer Iron Works; walked around the heads of the horses attached to the wagon, unloading brick into the dump cars; then east on Madison street, along the south side of the wagon; and, as he stepped on the westerly main track of the defendant, he was instantly struck by the tender of one of the defendant's locomotive engines, and killed."

As before stated, the rear end of the wagon box was within 3 feet of the westerly rail of the defendant's west track.    It appears that the tender of the defendant's engine extends a distance of about $2\frac{1}{2}$ feet beyond the rails, which would leave only a space of 6 inches between the rear of the wagon and the tender as it passed by.

In actions for negligence, it must be affirmatively shown that there was a lack of negligence contributing to the injury upon the part of the person injured.    Whalen v. Gaslight Co., 151 N. Y. 70, 45 N. E. 363.    This must be shown either by direct proof, or by circumstances from which the jury can infer the absence of negligence upon the part of the person injured.    Chisholm v. State, 141 N. Y. 246, 36 N. E. 184, and cases cited.    But when the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, the action cannot be maintained.    Cordell v. Railroad Co., 75 N. Y. 330; Wiwirowski v. Railroad Co., 124 N. Y. 420, 26 N. E. 1023. In this case there are only two persons who witnessed the accident,— one a witness sworn on behalf of the plaintiff, and who testified of the plaintiff's intestate that "he came over on the track, and stepped on it, and, when he was raising the foot the second time, the cars backed down, and, hit him."    The other was a witness sworn on the part of the defendant, who testified that he saw the plaintiff's intestate at the moment he was struck; that he did not see him before that time; and he testifies:    "He had both hands up.    The engine was just hitting him as I looked up."    Both witnesses testify that he was facing to the east at the time he was struck.    There is not a particle of evi-

dence in the case as to what the intestate did as he was approaching the defendant's tracks. It is contended on the part of the respondent that the location of the wagon, and the height of its box, coupled with the shortness in stature of the intestate, and the closeness of the wagon box to the rails of the defendant's tracks, would obstruct his vision, and prevent his seeing the approaching engine, and render it useless for him to have looked in that direction, because, if he had looked, it is contended he could have seen nothing excepting the wagon box. If the wagon obstructed his view north, that did not warrant him in stepping immediately from its shelter upon the defendant's tracks, without taking any precaution to ascertain whether it was safe to do so. A railroad crossing in the streets of a city is a dangerous place at best, and the location and character of the wagon and dump cars beyond it made this crossing at this time an unusually perilous place; and one who is approaching a place of peril and danger must be alert and vigilant, and display a prudence of conduct commensurate with the dangers of the place. Heaney v. Railroad Co., 112 N. Y. 122, 19 N. E. 422; Hoffmann v. Railroad Co., 67 Hun, 581, 22 N. Y. Supp. 463. The intestate was familiar with this crossing. He had worked at the Rensselaer Iron Works for a considerable length of time, and was in the habit of crossing the tracks of the defendant daily in going to and fro between his home and his place of employment. There is no direct evidence of a lack of contributory negligence, and no circumstances given in evidence from which the jury can infer the absence of negligence on his part contributing to the accident; and the law does not permit them to guess that he exercised that care and caution that a person should exercise when approaching a railroad crossing.

This is not like the case of Fejdowski v. Canal Co., 12 App. Div. 589, 43 N. Y. Supp. 84, recently decided by this court. In that case the night was dark, and the deceased, as he approached the tracks of the railroad company, stopped about 20 feet from the tracks. That stoppage was some evidence that he observed proper care and caution in approaching a dangerous crossing. Coupled with that was the passage of a train, and the fact that the engine which struck him followed the train at a distance of only some 200 feet, was going at a speed of from 25 to 30 miles an hour, was unlighted, and was so noiseless and swift that it was within 5 feet of one of the witnesses before he was aware of its approach. Here we have simply these naked facts: That the deceased, a person entirely familiar with this crossing, in broad daylight, walked alongside of a high wagon, which obstructed his view of the tracks to the north, and stepped from beside the wagon upon the defendant's tracks, immediately in front of the engine which struck him. Upon these facts, there is nothing from which the jury could infer due care and caution on his part.

The judgment and order appealed from should therefore be reversed, and a new trial ordered; costs to abide the event. All concur.